UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| IN RE:<br><br>SAGECREST II LLC<br>SAGECREST FINANCE LLC<br>SAGECREST HOLDINGS LIMITED<br>SAGECREST DIXON INC.,<br><br>DEBTORS. | CHAPTER 11<br><br>CASE NO. 08-50754 (AHWS)<br>CASE NO. 08-50755 (AHWS)<br>CASE NO. 08-50763 (AHWS)<br>CASE NO. 08-50844 (AHWS)<br><br>JOINTLY ADMINISTERED<br>UNDER CASE NO. 08-50754 (AHWS) |
| SAGECREST II, LLC<br><br>        Plaintiff,<br><br>- against -<br><br>EVAN TAWIL,<br><br>        Defendant. | Adv. Proc. No. _____<br><br>**COMPLAINT** |

SageCrest II, LLC ("SageCrest"), debtor and debtor-in-possession in the above-captioned bankruptcy cases (collectively, the "Bankruptcy Case"), by and through its attorneys, Neligan Foley LLP, and Zeisler & Zeisler, P.C., as and for its Complaint against Defendant Evan Tawil ("Mr. Tawil"), alleges as follows:

### NATURE OF THE ADVERSARY PROCEEDING

1. This proceeding is brought about by Mr. Tawil's failure to pay $24,954.21 in principal, interest and other fees pursuant to a certain note (the "Note") and loan and security agreement (the "Loan and Security Agreement") executed by Mr. Tawil on August 11, 2006 (together with all amendments thereto). The Note and the Loan and Security Agreement were assigned to SageCrest on May 19, 2008 and, thus, SageCrest has the right to receive all principal

and interest due thereunder plus SageCrest has the right to recover its costs including, but not limited to, its attorneys' fees.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this Action pursuant to 28 U.S.C. § 1334. This proceeding contains "core" claims within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O) and non-core claims which are "related to" a case under title 11 of the United States Code, U.S.C. §§ 101-1352, as amended (the "Bankruptcy Code"), within the meaning of 28 U.S.C. § 157.

3.  Pursuant to 28 U.S.C. § 157(b)(1), the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court") has authority to hear and determine Sagecrest's cause of action for Violations of the Automatic Stay under § 362(a)(3). Pursuant to 28 U.S.C. § 157(c)(1), upon the consent of Mr. Tawil, the Bankruptcy Court may hear and determine Sagecrest's causes of action for Nonpayment of The Note and Breach of Contract. Absent such consent, the Bankruptcy Court may hear these causes of action and submit proposed findings of fact and conclusions of law to the district court.

4.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

5.  SageCrest is a Delaware limited liability company with its principal place of business located at The Chrysler Building – East, 666 Third Avenue, New York, New York 10017. On August 17, 2008 (the Petition Date), SageCrest commenced a reorganization case by filing a voluntary petition for the relief afforded by Chapter 11 of the Bankruptcy Code. Under Section 301 of the Bankruptcy Code, the filing of the petition constituted an order for relief under Chapter 11 and, since that filing, in accordance with Sections 1107 and 1108, SageCrest has continued in possession and control of its assets and properties and has continued to operate its business and manage its affairs as a debtor-in-possession.

2

6. Upon information and belief, Mr. Tawil is a New York resident and has an address located at 112 West 34th St., New York, NY 10022.

## FACTUAL ALLEGATIONS

7. On or about August 6, 2011, Mr. Tawil executed the Note and Loan and Security Agreement, which created a Senior Credit Facility (the "Loan Facility") pursuant to which Mr. Tawil initially borrowed $70,000 from Fine Art Finance, LLC ("FAF"), a Delaware limited liability company, and which permitted Mr. Tawil to request additional loans up to the maximum amount of the facility ("the Maximum Facility Amount"). At the time, the Maximum Facility Amount was $100,000. The Note and Loan and Security Agreement are attached hereto as **Exhibit A.**

8. The face amount of the Note reflected the Maximum Facility Amount.

9. On more than one occasion after the execution of the Note and Loan and Security Agreement, Mr. Tawil and FAF mutually agreed in writing to amend the terms of the Note and the Loan and Security Agreement, including, but not limited to, the maturity date of the Loan Facility and the Maximum Facility Amount (the duly executed amendments to the Note and the Loan and Security Agreement are hereinafter referred to collectively as the "Amendments").

10. In exchange for the moneys advanced under the Loan Facility, Mr. Tawil agreed to pay interest and repay all principal plus pay other fees and expenses (collectively, the "Obligations") to the holder of the Note.

11. If Mr. Tawil was in compliance with all of his obligations under the Note, he was obligated to pay interest at a rate of 4.5% per annum above the Prime Rate (the "Base Rate") on the Obligations with the interest required to be paid each month in advance.

12. If an Event of Default occurred under the Note, Mr. Tawil was required to pay interest at the Base Rate plus 8% (the "Default Rate").

3

13. Mr. Tawil agreed to pay all of the out-of-pocket fees, costs and expenses incurred in connection with, without limitation, (a) any litigation relating to the Collateral (as defined in the Loan and Security Agreement), the Note and the Loan and Security Agreement, (b) any attempt to enforce the Note, and (c) any attempt to inspect, verify, preserve, restore, collect, sell, liquidate or otherwise dispose of or realize upon Collateral.

14. In each and every one of the Amendments, Mr. Tawil reaffirmed the Note and the terms of the Loan and Security Agreement.

15. In connection with the settlement of a litigation between SageCrest, FAF and certain other companies owned and controlled by Ian S. Peck (collectively, the "FAF Parties") in which SageCrest sought to recover over $40 million, the FAF Parties agreed to pay approximately $30 million to SageCrest, part of which was the payment of $6,700,000 plus interest (the "Balance") on or before November 19, 2008. On May 19, 2008, FAF assigned the Note and the Loan and Security Agreement to secure a portion of the Balance (the "Collateral Assignment").

16. FAF was permitted to assign the Note and the Loan and Security Agreement to SageCrest pursuant to Section 9.7 of the Loan and Security Agreement.

17. The terms of the Collateral Assignment and other related documents were incorporated into a "So-Ordered" Stipulation (the "Stipulation Order").

18. The Stipulation Order permitted FAF to continue to service the Note unless certain specified defaults occurred, either under the Stipulation Order, the Note or the Loan and Security Agreement.

19. The Note, the Loan and Security Agreement and the Loan Facility, as amended, matured on October 17, 2008.

20. On November 19, 2008, one of the FAF Parties, ACG Credit Company II, LLC ("ACG-II"), failed to pay the Balance when due. After SageCrest sent notice to ACG-II and other FAF Parties of the payment default, ACG-II failed to cure the default.

21. On or about November 26, 2008, SageCrest exercised its rights to service the Note.

22. SageCrest sent a notice to Mr. Tawil informing him, among other things, that the Note, the Loan and Security Agreement and the Loan Facility had been assigned to SageCrest, that SageCrest had taken over the servicing of the Note, that all principal and interest due on the Note should be paid to SageCrest, and that SageCrest would be contacting Mr. Tawil to discuss the Note.

23. Thereafter, Sagecrest and Mr. Tawil agreed that a painting entitled "Bisphenol A", which was Collateral for Mr. Tawil's debt to Sagecrest, would be sold at auction by Phillips de Pury & Co. and that the proceeds would be paid to Sagecrest.

24. Phillips de Pury & Co. successfully sold Bisphenol A at auction, as contemplated by Sagecrest and Mr. Tawil, and paid the proceeds, in the amount of $65,137.50, to Mr. Tawil. Mr. Tawil refused to deliver the proceeds to Sagecrest, in knowing and willful violation of the automatic stay under § 362(a)(3) of the Bankruptcy Code, the terms of the Loan and Security Agreement and his express agreement with Sagecrest shortly before the sale.[1]

25. Mr. Tawil has since failed to pay the remaining principal balance, interest, and storage costs, and other fees, including legal fees, due and owing to SageCrest under the Note and Loan and Security Agreement.

---

[1] Sagecrest ultimately recovered these funds from the auction house.

26. After extensive efforts to obtain payment in a consensual manner failed, SageCrest sent notice, dated September 27, 2011, to Mr. Tawil demanding payment in the amount of $24,954.21, which represents the principal balance of the Note, interest and additional fees and expenses.

27. Mr. Tawil did not, however, make any payment to SageCrest.

28. The total amount of principal, interest, storage costs and other fees, including legal fees due and owing to SageCrest is $24,954.21 as of August 31, 2011. Interest continues to accrue at the Default Rate. In addition, Mr. Tawil owes SageCrest all of its fees and expenses incurred, and which continue to accrue, in connection with the Note and the Loan and Security Agreement, including, but not limited to, SageCrest's attorneys' fees.

## **FIRST CAUSE OF ACTION**

(Nonpayment of the Note – Against Mr. Tawil)

29. SageCrest repeats and realleges paragraphs 1 through 28 as if fully set forth herein.

30. Upon information and belief, the Note and Loan and Security Agreement were executed by Mr. Tawil on or about August 11, 2006 and were delivered to FAF on or about that same date.

31. SageCrest is the holder in due course of the Note.

32. The Note is a binding and enforceable promissory note and Mr. Tawil is obligated to pay all principal, Default Interest and certain other fees and expenses including, but not limited to, storage fees and attorneys' fees, due under the Note and the Loan and Security Agreement.

33. To date, Mr. Tawil has not paid the Obligations that are due and owing to SageCrest.

34. As a result of the foregoing, Mr. Tawil has damaged SageCrest in an amount to be determined at trial, but in no event less than $24,954.21, plus SageCrest's attorneys' fees, costs, and both pre- and post-judgment interest at the Default Rate.

## SECOND CAUSE OF ACTION

### (Breach of Contract – Against Mr. Tawil)

35. SageCrest repeats and realleges paragraphs 1 through 34 as if fully set forth herein.

36. The Note and Loan and Security Agreements are valid, binding and enforceable agreements.

37. Mr. Tawil breached the Note by, *inter alia*, failing to pay principal and interest in violation of its obligations under the Note and Loan and Security Agreement and failing to pay other fees and expenses to SageCrest as Mr. Tawil is obligated to do under the Note and the Loan and Security Agreement.

38. As a result of the foregoing, Mr. Tawil has damaged SageCrest in an amount to be determined at trial, but in no event less than $24,954.21, plus SageCrest's attorneys' fees, costs, and both pre- and post-judgment interest at the Default Rate.

## THIRD CAUSE OF ACTION

### (Willful Violation of the Automatic Stay – Against Mr. Tawil)

39. SageCrest repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

40. Pursuant to § 541(a)(1), all legal and equitable interests of Sagecrest became property of its bankruptcy estate on the Petition Date.

41. Pursuant to a certain Security and Interest letter executed by FAF and Mr. Tawil, dated February 6, 2008, Mr. Tawil granted FAF a security interest in that certain painting known as Bisphenol A, which FAF thereafter assigned to Sagecrest prior to the Petition Date.

42. At all times relevant hereto, Sagecrest had a valid and enforceable security interest in Bisphenol A and/or any proceeds realized from any sale thereof.

43. When Mr. Tawil diverted and retained the proceeds of Bisphenol A for his own use and benefit, he knowingly and willfully possessed, exercised control over and misappropriated property of Sagecrest's bankruptcy estate in violation of the automatic stay enacted pursuant to § 362(a)(3), the Loan and Security Agreement, and his express representations to Sagecrest prior to the date of the sale.

44. As a direct and proximate result of Mr. Tawil's willful violation of the automatic stay, Sagecrest has incurred actual damages in an amount to be determined at trial, including costs incurred to recover the proceeds of Bisphenol A from the auction house, loss of use of the sale proceeds until they were recovered from the auction house and attorneys fees incurred to enforce the automatic stay.

45. In addition, Sagecrest seeks an award of punitive damages pursuant to the Bankruptcy Court's powers under § 105 of the Bankruptcy Code.

## PRAYER FOR RELIEF

WHEREFORE, SageCrest respectfully demands judgment on its Complaint as follows:

A. On the First Cause of Action, an amount to be determined at trial, but in no event less than $24,954.21, plus SageCrest's attorneys' fees, costs, and both pre- and post-judgment interest at the Default Rate;

8

   B. On the Second Cause of Action, an amount to be determined at trial, but in no event less than $24,954.21, plus SageCrest's attorneys' fees, costs, and both pre- and post-judgment interest at the Default Rate;

   C. On the Third Cause of Action, an amount to be determined at trial, but in no event less than the costs incurred by Sagecrest to recover the proceeds of Bisphenol A from the auction house, plus damages for lost use of the sale proceeds until they were recovered from the auction house, plus attorneys fees incurred to enforce the automatic stay; and

   D. Granting SageCrest such other and further relief as may be just and proper.

Dated: October 7, 2011     Respectfully submitted,

           ZEISLER & ZEISLER, P.C.

           By: /s James Berman
             James Berman (ct06027)
             Aaron A. Romney (ct28144)
             558 Clinton Avenue
             Bridgeport, Connecticut 06605
             Telephone: (203) 368-4234

           - and -

           NELIGAN FOLEY LLP
           Douglas J. Buncher PHV02880
           Patrick J. Neligan, Jr.
           325 N. St. Paul, Suite 3600
           Dallas, Texas 75201
           Telephone: (214) 840-5300

           COUNSEL FOR PLAINTIFF SAGECREST II, LLC